May it please the court, counsel, good morning. My name is Jeff Sandberg. I represent one of the appellants, SDM Holdings, LLC. To the extent we don't cover issues in our briefing, we'll rely on our briefing. We would like to reserve three minutes for rebuttal, given the opportunity. And you have to keep track of your own time. Yes, yes. And we would like for you to name it because there's so many issues to hear from counsel as to what you think are your best issue rather than trying to do that many in 15 minutes. Yes, Your Honor. Absolutely. And before I jump right in with one of one of the two issues that I'd like to begin with, I want to say it's an honor and a privilege to be here. Thank you. We hope you feel that way when it's over. So do I. I'm quite sure I will, Your Honor. Let's start with subject matter jurisdiction. And what we have here is when we think about subject matter jurisdiction, let's begin with ancillary jurisdiction. Ancillary jurisdiction, while it provides subject matter jurisdictions for a garnishment, it does not provide subject matter jurisdiction for an alter ego claim. And in particular, it does not provide subject matter jurisdiction for the unpleaded alter ego claim. And so as that principle of law, we cite the court to Peacock v. Thomas, United States Supreme Court case. We also cite the corporate interiors, and that's 972 Fed 2nd 1212. And the Sandlin court in particular held that the district court lacked jurisdiction over the alter ego claim because ancillary jurisdiction would not support it. So if ancillary jurisdiction fails, where else can we turn? In this case, Universitas argued, and the district court found diversity jurisdiction. Now let me ask you about that. How do we even know if the parties are diverse? Because we have various LLCs in here, and we have not drilled down to where all the members are from. And that is an excellent question, Your Honor. And the answer is in three words, we do not. Okay. But that's your people we don't know about, right? Well, it's actually both sides, Your Honor. Because when we look at how we do a diversity jurisdiction analysis, and I'm going to point the court towards a very recent opinion out of this court, July 1, 2022, Integrated Associates of Denver v. Poe. There's two key issues that that case provides us when we think about diversity jurisdiction. The first one is the burden of proof. The burden of proof is on the party asserting diversity jurisdiction, in this case, Universitas. The second key issue... Okay. So they say, yeah, we're diverse. I mean, generally what happens procedurally after that is you would move to remand based on an absence of a showing of complete diversity. But ordinarily, Your Honor. But the problem here is they never actually pleaded diversity jurisdiction. All they pleaded was the registration of the judgment. And so as a result, no diversity jurisdiction facts were ever actually pleaded by Universitas. And in fact, no alter ego pleading was ever filed by Universitas. And so I agree. Ordinarily, we would see in the plaintiff's pleading some allegation of diversity. That never occurred here. So as a result, in going back to the Integrated Associates of Denver opinion, the second issue that we look at... Did you say Integrated Associates? Yes, Your Honor. Integrated Associates of Denver versus Pope. And it was issued on July 1, 2022. And the second issue is that to determine if a party has met its burden of proof, the appellate courts must look to the face of the complaint. And there isn't a complaint here. And I would point out that that particular opinion, Integrated Associates, looks to the Hertz Company opinion out of the United States Supreme Court. It also looks for the first issue, and it looks to the Pantico Corp opinion out of this circuit for the second issue. So Universitas failed to establish diversity jurisdiction. As a result, there was never subject matter jurisdiction. The case should have been dismissed at the district court. OK, but there could have been ancillary jurisdiction, right? Absolutely not, Your Honor. Ancillary jurisdiction would be limited to garnishment. All right. OK, when we talk about the alter ego claim, which was never pleaded again, ancillary jurisdiction will not support alter ego. If we look at Peacock v. Thomas, and if we look at this court's opinion in Sandlin, that is made crystal clear. OK, let me joust with you a bit on this. So they also, at one point, had an argument that any assets that you were holding were in constructive trust for them, and that there should be imposed a constructive trust and basically tracing to determine what assets you had that belonged to them that they could garnish, right? Well, Your Honor, they filed and served a writ of garnishment. I understand that, but that was the position at one point below that the district court decided not to reach. That was never reached, and we're not here on that. I understand. But functionally, their alter ego claim is based on the same facts. It's, you received a fraudulent transfer of assets that are actually mine, you're holding them nominally for me, and I'm filing a writ of garnishment to take them back from you for me. Yeah, and absolutely that is not the case here, because procedurally, Your Honor, a writ of garnishment is very, very different than a fraudulent transfer claim. OK, would you agree that if they had, if the district court had proceeded on its constructive trust claim on the basis that there was a fraudulent transfer into you, your client, and that they were trying to claw it back because you were holding it in trust for them, that there would be ancillary jurisdiction? OK. In order, the fraudulent transfer claim would require subject matter jurisdiction based upon diversity jurisdiction in this case. The reason is this. In order for them to even have reached a fraudulent transfer issue, they first of all needed to plead it, and we never got there. So this is a hypothetical, because the district court never ruled on it, but a fraudulent transfer claim would still require a finding of subject matter jurisdiction. Now, the second point I was hoping to make, before we get away from jurisdiction, how does the injunctive relief play into all this? Why isn't there, for sure, jurisdiction in the area of the injunction that was granted? Well, the injunction that was granted was subject matter jurisdiction. And because there was an injunction, and this court has jurisdiction under section 1292, but the fact that the court entered an injunction after taking up some of the substantive arguments that Universitas never pleaded, the issue is not so much the district court's relief that it granted. The issue is really the district court's subject matter jurisdiction over the claims that were actually made, which in this case, the only claim that was legitimately made was the writ of garnishment. I'm struggling, so you'll know where I'm coming from in regards to the jurisdiction. If the injunction is there, we have jurisdiction over that. Yes, Your Honor, absolutely. And there is absolutely, positively, definitely an injunction in the district court's order that is being appealed. And then we had also subsequently asked the court to modify or vacate that order, which also results in jurisdiction in this court. The other point I want to make is just very briefly. Even if this court should determine, or should hold, I should say, excuse me, that the district court had subject matter jurisdiction, it expired when the five-year window under Oklahoma law expired. And the reason is this. Universitas wants to change the issue because Universitas wants to look at law on the issue of when can a judgment be registered. And on that question, the answer is you look to the issuing state to determine what the life is of a judgment. The issue presented in this case by us is very different. When you look to see how long a registered judgment lives for, or the alternative, when it expires, you look to the law of the state where the district court is where it was registered. And we point the court to the strong opinion out of this case, which was issued in the circuit in 2005. And so even if this court finds subject matter jurisdiction, it most definitely expired when the last enumerated act in the Oklahoma statute occurred, which was December 3rd, 2015. Five years later is December 3rd, 2020. Thank you so much. I'm going to turn it over to my co-counsel. Your Honors, Nanette Turner-Kalsik on behalf of Appellant, Intervenor, Avon Capital, Wyoming. May it please the court. Avon, Wyoming's argument can be summed up in two words, due process. Council for SDM has covered the fact that Universitas never filed a pleading of any sort alleging alter ego. The second issue is that assuming arguendo, that no pleading is necessary and Universitas could somehow raise its claim of alter ego, they're still entitled to due process. And Avon, Wyoming was not a party to either of the two cases that the magistrate judge in this case in issuing her report and recommendation relied on heavily in making her findings of fact and conclusions of law. Judge Heaton then ultimately adopted those findings. If you look at the report and recommendation and strip away all of the citations to cases that Carpenter criminal case or the turnover proceedings in New York to which Avon, Wyoming was not a party, very little remains. And the law is that not only do the facts supporting the inquiry are generally not well suited for summary judgment, but the facts supporting the elements for veil piercing and alter ego must be alleged clearly and distinctly and proven by clear and convincing evidence. Council, let me step in here because I don't know if you're responsible for the briefing on the due process on Avon, Wyoming, but I find it very troubling that on page 12 of your brief you specifically quote saying a violation of due process does not occur if a court permits a cause of action that should properly be prosecuted as a civil action to proceed under these rules promulgated to assist in the collection efforts of a judgment creditor. Is that from your brief? Did you? Because it's under the Avon, Wyoming section. Did you do that? Because that's not this quote doesn't anywhere appear in that case. Correct. The quote and I believe that was clarified in the reply brief, but the quote was incorrectly attributed to the Hamilton case. And in the reply brief, we did respond to that and clarify that that quote is a direct quote from Nichols versus Chesnoff, which is a 10th Circuit case that arose out of that. And that quotes a Utah Supreme Court case. It does quote the Utah Supreme Court case and interprets that finding in the context of that case. And that was an error that we corrected in our reply brief. That is correct. And with that, I'd like to reserve the brief amount of time for rebuttal. May it please the court. My name is Joseph Manson and I'm appearing for the Employee Universitas Education, LLC. The court below probably found that there was a, SDM was an Oklahoma entity, Avon, Wyoming, a Wyoming entity, and Universitas, a New York entity. That's not the end of it, though. Don't you, when you have LLCs, have to drill down to the members to make sure there's complete diversity? Yeah, well, the member of, there's only one member who owns 100% interest in SDM, and that's Avon, Wyoming. So you continue to have diversity. So the court was 100% correct in asserting diversity jurisdiction as a basis to go forward with the case. Now, with respect to Mr. Sandberg's argument about the five-year lapse, the Supreme Court of Oklahoma recently looked at that and found that what is really operative in that circumstance is to look at the length of time in the state where the judgment was entered. And this normally comes up in the context of someone abandoning their filing of the judgment in the state. That didn't happen here. There wasn't any abandonment. And the court noted that Universitas was diligent in prosecuting the case throughout the five-year period. Once the five years expired, then the judge found that it should not matter because of the diligence, and he relied on the diligence. The TerraCorp LTD v. Daley case, which is the Supreme Court of Oklahoma, it's a 2018 case found at 419 P. 3rd 217. And that case held that enforcement may be done even if Oklahoma's limitation period for enforcement of the judgment is run on the original domesticated foreign judgment, as long as there is still time in the state where the judgment was entered that you're filing. Counsel, can I just stop you there? Isn't it true, though, that TerraCorp applies to parties that have re-registered already? I mean, wasn't that the case there? And isn't that a distinction? That wasn't the case there. But we re-registered on December the 9th, 2021, as the judge had said in his order, that to eliminate any question, we could re-register the judgment. That's exactly what we did. And he said that his orders would be effective instantly upon the reinstatement. So either way you look at it, that issue is not a basis for disturbing and overturning this decision. Counsel, any way that I look at it, I've still got some problems and concerns with that because most of the states statutorily have a way to renew a judgment. And I assume that that's what we have here in Oklahoma and looking at the statute is that it's a five-year renewal period. And I can do that once or twice or maybe even three times by statute. But the question I have in regards to renewal, did you renew it within that five-year period of the initial period of judgment? No, Your Honor. The clock starts again in Oklahoma. Well, I know it starts again, but let's say that you have from the year 2020 to the year 2025, the month of December. What happens in Oklahoma if you do not renew that judgment until February of 2026? The clock starts again, Your Honor. Even though there's a gap which you didn't renew within the five years? Yes, Your Honor. That's the holding of the terrible case. Okay. Because that's a little different from what I'm used to seeing and reading. I understand, Your Honor. But the normal case is that the judgment lapses because the judgment creditor abandons it for some reason or some period of time. And in this case, there was a refiling. But the court made it very clear, the Oklahoma Supreme Court made it very clear that the analysis should focus on whether or not the judgment was still effective in our case in New York. And it was. It was a 20-year requirement in New York. So that issue is one that does not want reversal of Judge Heaton's decision. The thing that I would like the court to remember is that Dan Carpenter stole $30 million from my client. And he used part of that money, $6.7 million he transferred to buy SDM. So that SDM portfolio of insurance policies belongs to my client. Is that where the injunction applies to that purchase in this case? There's no injunction that's entered that would affect that. But Judge Heaton made a ruling that the receiver could not sell any of the policies without permission from the court. And even though he said, as you alluded to, with respect to constructive trust, that there may be a basis for constructive trust where we could just levy and take the policies, his preference was to have a receiver appointed who would make sure that these assets were protected during dependency of this appeal. And Judge Heaton wanted this court's decision, final decision, before there were any disbursements made out of an abundance of caution. And we understood that and we didn't object to that. So he, I mean, he's just preserving the status quo with that. So they can't, you can't grab the money and they can't get rid of it. Well, that's right. But he also denied their request for a stay. Let me correct that. He didn't deny their request for a stay of the decision pending appeal. He said that he would grant the stay if they would post a supersedious bond of $11 million, which they declined to do. So there isn't any stay that's outstanding. And of course, as the court well knows, in the absence of a stay, unless there's some other provision of an order that precludes you from doing it, we could be in possession of those policies today. Right. So let's, not discounting that your word is good on your position on diversity, but let's talk about the ancillary jurisdiction a little bit. And so essentially, you have a summary action where part of it is, requires a determination that these companies are the alter ego or instrumentality of Avon, Connecticut or whichever company, right? Yes, sir. And at least traditionally, you would see that pled in a complaint where you tried to establish liability against those companies as the alter ego and claw that money back that way after there's been an opportunity to fully defend the case and prove they're not the alter ego. I mean, how do we skip what would traditionally be the course of action here and get to this under a summary proceeding? I mean, outside of the Eastern District of Virginia case and the Delaware case. Well, we cited two cases in our papers, Scottsdale Insurance Company versus Colliver, which is a Northern District of Oklahoma case, a 2012 case. And we also cited the Mattingly Law Firm versus Henson case, which is another Oklahoma appellate decision at Oklahoma CIVAP 198, finding that law and equity supported reverse piercing the corporate veil in a garnishment proceeding where a debtor exercised control over the LLC's and the most important thing, again, to remember here is piercing the corporate veil, as the court knows, is basically an equitable remedy. And in order for there to be an equitable remedy in these circumstances, the courts have said that it would amount to an injustice if the piercing the corporate veil protection was extended to a crook, which we certainly have in this case. He's been to jail, has been convicted. He's done everything in his power for many years to keep my client from collecting the judgment that they were entitled to from 2009 forward. And so I believe that the order that was entered by establishes that it would be inequitable to have universitas precluded from this piercing the corporate veil analysis. And finally, that Dan Carpenter, which is what the criminal court found, which is what the New York court found, which is what the court below found, is the person that controls all of these entities and what we call the Carpenter criminal network. And even though this is part of the opinions, Your Honor, but this is not part of the summary judgment decision. But there's a letter from Carpenter. Can I just stop you there? I think opposing counsel is saying there's a notice problem. I mean, you're arguing the merits, but can you help me with notice that they didn't have notice that this was going to happen, an alter ego theory would be adjudicated? Well, the alter ego argument was raised by Avon Wyoming when it said that it was separate and distinct from Avon, Connecticut, the very outset of this case. And in the discovery conference and the hearing before the court, everyone was on notice that the summary judgment motion was going to be a claim. So they had ample notice. They had ample notice from the other proceedings as well, because the whole focus was on Dan Carpenter running all of these entities, hundreds, hundreds of LLCs, according to Judge Swain, where he transferred assets back and forth in order to try to shield them from his creditors. So let me see if I follow that. So you're saying you follow writ of garnishment, and during the discovery conference, Avon Wyoming says, hey, he can't do that to us because we're not Avon, Connecticut. We're a separate and distinct company. At which time you say, no, you're not. You're the alter ego in instrumentality of that That's what happened. And so your argument would be that they opened the door to this by raising the separate and distinct nature of their company. Yeah. By saying their very first pleas in this case, that we are not a party to any judgment, and we don't have anything to do with Avon, Connecticut or Avon, Nevada, basically. That's what they said. That put the issue into this case. And it's only logical that Judge Heaton followed that path and came to the realization that this is all one entity, Avon Wyoming, Avon, Nevada, Avon, Connecticut. The funding for Avon Wyoming to purchase STM came from Avon, Nevada. Counselor, your time has expired. Thank you. I may have pleased the court. Just scattershot here, shotgun style. First of all, Avon Wyoming denying Universitas' statement in an unrecorded conference and saying Avon Wyoming is a separate entity. If I serve a writ on you and say, hey, I want this $6 million that you're holding, and you say you can't have it because we're different than the company you got the judgment against, doesn't that then suggest to me and to you that the next thing that's going to happen is I'm going to try to prove that you're not different? But the writ of garnishment was served on STM, which is a distinct LLC. They didn't serve a writ of garnishment on Avon Wyoming. So the other point is, and they go back to this Terracorp opinion, Terracorp is a registration, a re-registration case. So that's exactly the argument that's not in front of the court. The question is expiration of a judgment of Oklahoma law. Counsel, can I just follow up on that? So what about the fact that it was, your opposing counsel argues that, hey, this is still good for 20 years in New York. What does that, how does that affect your case? Directly, it does not affect our case or our arguments. And here's why, if I may. I'm out of time. Thank you for letting me go on. The life of the New York judgment becomes relevant to the issue of, can that judgment be registered or re-registered? The issue before this court is, did the judgment that was registered expire five years after December 3rd, 2015? Different issue, different law. The Oklahoma statute, section 735, lists the steps that can be taken during the five-year window to restart the five-year window. And when the court looks at the docket of the district court, this court can see those steps did not occur after December 3rd, 2015. Thank you very much for your time. It's been a pleasure. Thank you.